576

**UNITED STATES of America ex rel.**
**Edward HENDERSON**

v.

**Joseph MAZURKIEWICZ, Director.**

**Misc. No. 69–219.**

United States District Court,
E. D. Pennsylvania.

Sept. 23, 1969.

Supplemental Memorandum and Order
Oct. 7, 1969.

Edward Henderson, in pro. per.

Stewart J. Greenleaf, Asst. Dist. Atty. of Montgomery County, Norristown, Pa., for Joseph Mazurkiewicz.

OPINION AND ORDER

BODY, District Judge.

The relator is presently confined at the State Correctional Institution at Philadelphia, Pennsylvania, on a one to ten year sentence imposed on September 20, 1968 for conviction on Bill No. 523, November Term 1965, in the County of

Montgomery, charging burglary, larceny and conspiracy to commit burglary.

The relator raises two issues in his habeas corpus petition: first, that he was denied a timely, direct appellate appeal by counsel's negligence, inordinate delay and abandonment; and second, that the search and seizure of property in his car and his subsequent arrest and conviction were constitutionally invalid.

█ As to relator's first allegation, this Court is of the belief that relator has not exhausted his state remedies in seeking relief. An additional problem is created by the fact that relator states no facts upon which this Court can adequately base a judgment.

With respect to the search and seizure and arrest, this Court holds that they were constitutionally defective in that insufficient evidence existed to establish the probable cause made necessary by the Fourth and Fourteenth Amendments. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The facts surrounding the search and arrest were adequately elucidated at the motion to suppress hearing (denied) and the trial on June 23–24, 1966.

## FACTS

The relator and his co-defendant in the state prosecution, Raymond Mann, were placed under surveillance by the Philadelphia Police sometime in December 1965. The police had received information to the effect that Henderson and Mann had been involved in residential burglaries in the greater Philadelphia area. On December 30, 1965, at about 6:00 P.M., Detectives Ryan and Snyder, from their parked unmarked police cars, observed Henderson and Mann leave a taproom at 15th and Wingohocking Streets. (N.T. 13) Henderson got into a '59 Lincoln Continental white convertible on Wingohocking Street, and Mann got into a '59 Rambler blue sedan on 15th Street. (N.T. 13–14) They drove

their cars away with Henderson in the lead; the police followed at a distance with Mann's car in the middle. A state policeman, Detective Caracci, followed in his car but lost communication with Detectives Ryan and Snyder almost immediately. (N.T. 16) The cars proceeded north to the vicinity of 8709 Montgomery Avenue in Springfield Township. (N.T. 16) At about 6:45 P.M. in the vicinity of 8709 Montgomery Avenue, the police lost contact with the subjects' cars. (N.T. 17)

At about 7:00 P.M. Officer Boyle of the Springfield Township Police Department located Mann's car on Harston Lane, 900 block, in Springfield Township. It was unattended. (N.T. 17) Detective Ryan established surveillance of this vehicle at approximately 7:15 P.M. and shortly thereafter saw Henderson drive up in the Lincoln and let Mann out. The Lincoln made a U-turn and went back out Harston Lane. The Rambler did likewise. (N.T. 18–19)

The Lincoln was subsequently located at 15th and Wingohocking Streets at about 9:00 P.M. Henderson was picked up at the taproom at about 9:00 P.M. by Sergeant Fenci, the superior of Detectives Snyder and Ryan in the Major Crimes Section. (N.T. 46–47) Fenci searched Henderson and found six silver dollars. He was then taken to the police headquarters at 8th and Race Streets, Philadelphia. (N.T. 47) No warnings were given to Henderson at this point. Sergeant Fenci stated that he told Henderson, "Get your coat and come with me." (N.T. 49) At the time Henderson was taken into custody, the police had no knowledge that any particular burglary had taken place on December 30th. Sergeant Fenci stated, "I only know the facts as was related to me by Ryan and Snyder, the circumstances as was transpired that night." (N.T. 52)

Mann was apprehended by Officer Williams of the Springfield Township Police and Detective Snyder at Bethlehem Pike and Franklin Street after a chase. Detective Snyder and Officer Williams testified that they had attempt-

ed to stop Mann shortly after he left Harston Lane but that he slipped through their roadblock.

At about 11:30 P.M. Detective Ryan went before Magistrate Raymond Malone to get a warrant to search Henderson's Lincoln car. The property to be seized was described as "Furs (stoles, coats & Jackets) Jewelry, Stocks and Bonds. Also Burglar Tools." The date of violation given was "December 30, 1965". The statement of probable cause given by Detective Ryan is as follows:

"The assigned received information from a confidential source to the effect that Edward Henderson PP#274-778 who has a record of 17 arrests, 4 of which are for burglary and Raymond Mann PP#272931 who has a record of 9 arrests 7 of which are for burglary, were committing burglaries in the greater Phila. area. The undersigned did personally observe Mann on Wed. 12-22-65 pick up Henderson at his residence 4506 N. Hicks St. On 12-29-65 the assigned again observed Mann, coming out of a tap room on the S.W. corner of 15th. and Wingohocking St. in company with Henderson, Mann got into his car alone and left the vicinity. On Dec. 30th., 1965 the assigned in company with Det. Snyder #715, MCD. observed the subjects car mentioned above parked on Wingohocking St. East of 15th. St. also observed parked on 15th St. north of Wingohocking St. a 1960 Rambler Sdn. Pa. 454-44P this car being the one used by Mann. At 5:30 P.M. 12/30/65 observed Henderson & Mann come out of tap room SW 15th. & Wingohocking Sts. get into their respective cars a mobile surveillance was conducted which led to Springfield Twnsp. at which location the Rambler was observed parked on Harston La. at 7:15 PM the Lincoln Snd. [sic] was drive [sic] up to the Rambler Sdn. Pa. 45544P [sic], stop and allow Raymond Mann to get out he in turn got into the Rambler and both cars made "U" turns and drove out of Harston La. turning at the corner and going opposite directions. Agt. Arbury Williams, Plcmn. James Boyle and Det. Snyder stopped Mann after a short chase at Franklin Rd. & Bethlehem Pike. All of the above actions indicate to the assigned that the person's mentioned were in the process of committing a burglary or were coming from a burglary.

/s/ John F. Ryan
Detective #760, Major Crimes Div."

Shortly thereafter, Detective Snyder drove the Henderson vehicle to police headquarters where it was searched. (N.T. 144) The search produced two flashlights, three screwdrivers, a pair of ice grips, a pair of gloves, a license tag other than the one which was issued to the vehicle, and a mink jacket (N.T. 36) with the initials "L.H.A." on the lining. (N.T. 120) The mink coat was subsequently introduced into evidence at the trial.

On December 31, 1965 a burglary was reported to have occurred at 1403 Paper Mill Road in Springfield Township at the residence of Lehla H. Altman, whose family was away on vacation at the time. Mrs. Altman testified at the trial that the mink jacket was hers. There was also evidence presented that tended to prove that a screwdriver like that found in relator's car had been used to gain entrance to the Altman home.

## LEGAL CONCLUSIONS

### Search

This Court is of the belief that the search warrant subscribed to by Detective Ryan was constitutionally defective because it did not contain facts upon which probable cause for its issuance could be based.

A search warrant must stand or fall on the information stated within the four corners of the document itself. In United States v. Sterling, 369 F.2d 799 (3rd Cir. 1966), the Third Circuit stated: "The affidavit must be the exclusive support for the warrant."

The warrant presently under consideration contains the statement that "The assigned received information from a confidential source to the effect that [Henderson and Mann] * * * were committing burglaries in the greater Philadelphia area." While it is clear that:

> "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant (drew his conclusions), and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, [11 L.Ed.2d 887] was 'credible' or his information 'reliable'." Aguilar v. Texas, supra, 378 U.S. at 114, 84 S.Ct. at 1514.

Such underlying circumstances are totally lacking in the instant warrant.

As a result of *Aguilar,* questions were raised concerning the constitutional sufficiency of an informant's tip for the purpose of establishing probable cause when corroborated in the search warrant by independent evidence. The Supreme Court recently faced this question in the case of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court there said:

> "The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would

pass *Aguilar's* tests without independent corroboration ?"

393 U.S. at 415, 89 S.Ct. at 588.

Turning to the facts of the present case, it is inescapable that the corroborating information in the affidavit does not raise the informant's tip to the level of compliance with the *Aguilar* requirements. At most, this information indicated that Henderson and Mann had used their individual cars to travel to Springfield Township where Mann left his car and joined Henderson in the latter's car. Subsequently they returned to where Mann's car · was parked and continued their travel from there in their respective cars. This by itself cannot be said to support both the inference that the informer was generally trustworthy and that he had made his charge against Henderson on the basis of information obtained in a reliable way. Compare Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Moreover, the substance of the corroborating evidence is not adequate, even when taken with the informant's tip, to establish probable cause. As has already been pointed out, there is nothing to suggest that the informant's tip was anything more than "a casual rumor circulating * * * or an accusation based merely on (the) individual's general reputation." Spinelli v. United States, supra, 393 U.S. at 416, 89 S.Ct. at 589. The personal observations of Henderson's activities which were stated in the warrant also fail to provide an inference of criminal activity. The fact that Henderson and Mann were seen together on more than one occasion leaving a taproom at 15th and Wingohocking Streets, that on December 30, 1965 they were seen to depart this location in separate cars and were followed to Springfield Township where one car was first parked and then returned to by both men in the second car, is entirely consistent with lawful conduct on the part of both men. It is true that there was evidence that Mann had to be chased before he would stop for the police, but it is difficult

to see how that adds to the probable cause supporting a search of Henderson's car. While the Motor Vehicle Code may require a person to stop at the command of the police, there is some doubt that the correct method of issuing such a command was employed by the police. Additionally, the police may well have lacked probable cause for stopping Mann's car in connection with the instant convictions. The Court is therefore reluctant to consider the manner in which Mann was stopped as evidence of probable cause.

Finally, while unnecessary to this determination, certain facts brought out in court, but not in the warrant itself, show how deficient the evidence of probable cause was. First, at the time of the issuance of the warrant and the search, the police had no knowledge of what particular crime the relator might have committed. The police did not know if in fact a burglary had been committed by the relator on December 30, 1965. (N.T. 37, 52, 145) In fact, Detective Ryan stated that he did not know whether the items being searched for were the result of burglaries on December 30th, 29th or 22nd. (N.T. 38) It should be noted that the warrant recited December 30th as the "Date of Violation."

### Arrest

■ At the motion to suppress the relator's counsel, Mr. Ricchuiti, questioned Sergeant Fenci about the information he had before he arrested Henderson. Ricchuiti asked: "At the time that you arrested Edward S. Henderson, did you knew whether or not a burglary had been committed on December the 30th?" Fenci answered: "No, I only know the facts as was related to me by Ryan and Snyder, the circumstances as was transpired last night." (N.T. 38)

Since the search and seizure were not based upon probable cause, the arrest was necessarily deficient since it was based upon the same information. Spi-

nelli v. United States, supra, at 415 n. 5, 89 S.Ct. 584.

### ORDER

And now, this twenty-third day of September, 1969, it is ordered that the petition of Edward Henderson for a writ of habeas corpus be and the same is hereby granted.

It is further ordered that the execution of the writ be stayed for a period of ninety (90) days from the date hereof to afford the Commonwealth of Pennsylvania an opportunity to appeal from this order or to re-try the said Edward Henderson. Absent either an appeal and further stay of this order or a re-trial of the relator within the aforementioned period, the writ shall issue and the relator be released from custody.

### SUPPLEMENTAL MEMORANDUM AND ORDER

On September 23, 1969 an opinion and order were filed in this matter granting relator's petition for writ of habeas corpus. Execution of the writ, however, was stayed for a period of ninety (90) days in order to afford the Commonwealth of Pennsylvania an opportunity to appeal from this Court's order or, in the alternative, to re-try the relator. On October 1, 1969 relator filed a petition for allowance of bail, which is presently before the Court for consideration.

■ Since relator was incarcerated pursuant to the judgment of a Pennsylvania state court, it is to the state courts, and more specifically the court which entered the judgment of incarceration, that he must apply for the allowance of bail. Accordingly, the following order is entered.

### ORDER

And now, this seventh day of October, 1969, it is ordered that relator's petition for allowance of bail be and the same is hereby denied.