UNITED STATES of America ex rel.
Raymond William MANN

v.

Joseph F. MAZURKIEWICZ, Sup't.

Misc. No. 69–571.

United States District Court,
E. D. Pennsylvania.

Sept. 14, 1970.

Grace Kennedy, Villanova School of Law, Villanova, Pa., for relator.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Relator, a State prisoner, is presently incarcerated at the State Correctional Institution at Pittsburgh, Pennsylvania, serving a two to ten year sentence imposed on April 21, 1967, after being convicted of burglary, larceny and conspiracy on Bill No. 523, Montgomery County, Pennsylvania, November Term 1965. Relator's motions for a new trial and in arrest of judgment were denied by the trial judge and both the Superior (June 21, 1967) and Supreme (June 24, 1968) Courts of Pennsylvania affirmed such denial.

In his petition for a writ of habeas corpus relator raises two grounds, namely, that his arrest without a warrant was not based upon probable cause in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and that "[r]elator was prejudiced by the use of evidence gathered as a consequence of an illegal search and seizure directed at [relator's co-defendant] * * * Edward Henderson".[1]

---

1. Relator's co-defendant, Edward Henderson, presented a petition for a writ of habeas corpus before the Honorable Ralph C. Body of this Court, alleging, *inter alia*, that the search and seizure of property from his automobile and his subsequent arrest and conviction were constitutionally invalid. In an opinion and order dated September 23, 1969, the Court held that the affidavit and search warrant relating to the search of Henderson's automobile were constitutionally defective in that insufficient evidence existed therein to establish the requisite probable cause for the issuance of the warrant. United States ex rel. Henderson v. Mazurkiewicz, 312 F.Supp. 576 (E.D.Pa.1969).

At the outset, we must note that relator, in his State Court proceedings, by way of his motions for new trial and arrest of judgment and the subsequent appeals, did not seek to challenge the lawfulness of his arrest. In those proceedings, relator made only one of the contentions raised here, namely, that he was prejudiced by the evidence obtained as a result of an illegal search of his co-defendant's automobile. Consequently, as to the first issue concerning relator's arrest, there has been a failure to exhaust available State Court remedies. Relator's counsel has conceded this at oral argument and we, therefore, will deny relator's petition without prejudice as it pertains to the arrest issue.

We have carefully reviewed the State record and have found it sufficiently complete as to make a further evidentiary hearing unnecessary. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Montanez v. Rundle, 226 F.Supp. 118 (E.D.Pa.1964). The record indicates the following facts:

On December 21, 1965, Detective John Ryan, a member of the Major Crimes Division of the Philadelphia Police Department, received information from a confidential source that relator and his co-defendant Henderson were committing residential burglaries in the greater Philadelphia area. As a result of the information received Detectives Ryan and Charles Snyder were instructed to place the relator Raymond Mann and Edward Henderson under surveillance. Both detectives knew Mann and Henderson on sight since they had prior incidents with the law over a period of approximately six to seven years. On December 30, 1965, at about 6 P.M. the detectives, from unmarked police vehicles, observed relator and his co-defendant leaving a taproom at Fifteenth and Wingohocking Streets in Philadelphia. Henderson got into a 1959 White Lincoln Continental convertible and relator got into a 1959 blue Rambler sedan. Both drove in a northerly direction with Henderson in the lead and with the police following at a distance until they reached Montgomery Avenue, leading to Springfield Township, Montgomery County, Pennsylvania. At about 6:45 P.M., the police lost sight of the two men for approximately fifteen minutes until a Springfield Township officer observed Mann's unattended vehicle on Harston Lane in Springfield Township. Mann's vehicle was placed under surveillance. After 7:15 P.M. Detective Ryan saw Henderson drive up in his Lincoln and let Mann out, whereupon Mann entered his own car, both made U-turns and drove out Harston Lane. Immediately thereafter relator was apprehended by Officer Williams of the Springfield Township police and Detective Snyder at Bethlehem Pike and Franklin Street after a short chase. Approximately two hours later Henderson returned to Fifteenth and Wingohocking Streets in his Lincoln and was arrested, searched and taken to police headquarters at Eighth and Race Streets. The search of Henderson's person uncovered six silver dollars. No warnings were given to Henderson at the time of his arrest and the police then had no knowledge that any particular burglary had taken place on December 30.

At about 11:30 P.M. Detective Ryan appeared before Magistrate Raymond Malone and obtained a warrant to search Henderson's Lincoln. The property to be seized was described as "furs, (stoles, coats and jackets) jewelry, stocks and bonds. Also burglar tools". The statement of probable cause given by Detective Ryan is as follows:

The assigned received information from a confidential source to the effect that Edward Henderson PP #274778 who has a record of 17 arrests, 4 of which are for burglary and Raymond Mann PP #273931 who has a record of 9 arrests 7 of which are for burglary, were committing burglaries in the greater Phila. area. The undersigned did personally observe Mann on Wed. 12–22–65 pick up Henderson at his residence 4506 N. Hicks St. On 12–29–65 the assigned again

observed Mann, coming out of a tap room on the S.W. corner of 15th and Wingohocking St. in company with Henderson, Mann got into his car alone and left the vicinity. On Dec. 30th, 1965 the assigned in company with Det. Snyder #715, MCD, observed the subjects car mentioned above parked on Wingohocking St. east of 15th St. also observed parked on 15th St. north of Wingohocking St. a 1960 Rambler Sdn. Pa. 454–44P this car being the one used by Mann. At 5:30 P.M. 12/30/65 observed Henderson & Mann come out tap room SW 15th & Wingohocking Sts. get into their respective cars a mobile surveillance was conducted which led to Springfield Twnsp. at which location the Rambler was observed parked on Harston La. at 7:15 P.M. the Lincoln Snd. (sic) was drive (sic) up to the Rambler Sdn. Pa. 45544P (sic), stop and allow Raymond Mann to get out he in turn got into the Rambler and both cars made "U" turns and drove out of Harston La. turning at the corner and going opposite directions. Agt. Arbury Williams, Plcmn. James Boyle and Det. Snyder stopped Mann after a short chase at Franklin Rd. & Bethlehem Pike. All of the above actions indicate to the assigned that the person's mentioned were in the process of committing a burglary or were coming from a burglary.

/s/ John F. Ryan

Detective #760,

Major Crimes Div.

Upon the basis of the above a search warrant was issued and later that evening Detective Snyder drove the Henderson vehicle to police headquarters where it was searched. The search uncovered one mink jacket with the initials LHA sewn into the lining, as well as two flashlights, three screwdrivers, a pair of ice grips, a pair of gloves, and a license tag issued to another vehicle. The mink

jacket was subsequently introduced into evidence at relator's trial.[2]

On December 31, 1965, a burglary was first reported to have occurred at 1403 Paper Mill Road in Springfield Township at the residence of Louise H. Altman, whose family was away at the time, so the first time that the police had official notice that a particular crime had been committed was not until subsequent to the arrest of Mann and Henderson.

Since any issue concerning the legality of relator's arrest is not before us, the remaining issue reduces itself to whether or not relator has sufficient standing to object to the alleged illegal search and seizure of evidence from his co-defendant's automobile. For purposes of this argument we will assume there was an insufficient statement of fact in Officer Ryan's affidavit to establish the requisite probable cause for the issuance of a warrant to search Henderson's automobile.[3]

In support of his position relator initially cites Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) as stating the underlying rationale of the Fourth Amendment exclusionary rule: "The rule is calculated to prevent not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." 367 U.S. at 656, 81 S.Ct. at 1692, quoting Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed. 2d 1669 (1960).

■ Prior to the *Mapp* decision in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) the Supreme Court related the applicable standing requirements in the language of Rule 41(e) of the Federal Rules of Criminal Procedure, namely, to qualify for standing to object to an alleged illegal search and seizure one must be a "person aggrieved" in the sense set forth in Rule 41(e). Jones v. United

---

2. Relator and his co-defendant Henderson were tried together.

3. See United States ex rel. Henderson v. Mazurkiewicz. Note 1, *supra.*

States, *supra.* A "person aggrieved" in Federal rule terminology is one who is the victim of the search and seizure—one against whom the search was directed as distinguished from one who claims prejudice only through the use of evidence gathered in a search directed at someone else. *Jones, supra,* at 261, 80 S.Ct. 725. On our facts, relator argues that the search of Henderson's car was indeed directed against both Henderson and himself since the police knew that relator had been an occupant of Henderson's vehicle only a few hours before the search warrant was obtained. Furthermore, relator argues that the affidavit of Detective Ryan in support of the warrant mentions relator's name as well as Henderson's name and concludes with the following language: "All of the above actions indicate that the *persons* mentioned therein were in the process of committing a burglary or coming from a burglary". (Emphasis added) On these bases and on the premise that the purpose of the Fourth Amendment's exclusionary rule is to deter lawless conduct, relator urges that he has standing to suppress the fruits of the search of Henderson's car.

■ We note, however, that the expansive reading of the Fourth Amendment which relator urges us to adopt was rejected by the United States Supreme Court in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1969). The Court stated at page 174, 89 S.Ct. at page 966: "We adhere * * * to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted". Here, relator asserts no ownership or proprietary interest in Henderson's vehicle and was not present therein at the time the vehicle was searched. The search, therefore, invaded no right of privacy of relator's person or premises which would entitle him to object to its use. See Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). In response to relator's argument concerning the deterrent purpose of the Fourth Amendment's exclusionary rule the Supreme Court in the *Alderman* case reasoned as follows:

But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.

The necessity for that predicate was not eliminated by recognizing and acknowledging the deterrent aim of the rule [citing Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)]. Neither those cases nor any others hold that anything which deters illegal searches is thereby commanded by the Fourth Amendment. The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which discloses the truth. 394 U.S. at 174–175, 89 S. Ct. at 967.

The above cited language clearly demonstrates the Court's views concerning the extension of Fourth Amendment protection to those whose rights were not actually violated by a search and seizure. We do not find the necessary invasion of relator's privacy sufficient to warrant granting him standing on these facts. We will, therefore, deny relator's petition for a writ of habeas corpus on the search and seizure issue for lack of standing. As we concededly do not have before us the issue concerning the law-

fulness of relator's arrest, we express no opinion thereon since relator still may avail himself of appropriate State procedures to raise that issue.

The Court wishes to express its gratitude to Grace Kennedy, Esquire, relator's Court-appointed counsel, for her able and thorough brief and oral argument in relator's behalf.