**UNITED STATES of America ex rel.**
**Edward HENDERSON (H–6460),**
**Appellee,**

v.

**Joseph MAZURKIEWICZ, Director.**

**Appeal of COMMONWEALTH OF**
**PENNSYLVANIA.**

**No. 18485.**

United States Court of Appeals,
Third Circuit.

Argued March 18, 1971.

Decided June 8, 1971.

Biggs, Circuit Judge, filed a dissenting opinion.

Stewart J. Greenleaf, Asst. Dist. Atty., Norristown, Pa. (Paul W. Tressler, Asst. Dist. Atty., Parker H. Wilson, First Asst. Dist. Atty., Milton O. Moss, Dist. Atty., Norristown, Pa., on the brief), for appellant.

H. David Prior, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee.

Before BIGGS and KALODNER, Circuit Judges, and WHIPPLE, District Judge.

OPINION OF THE COURT

PER CURIAM:

The court below 312 F.Supp. 576, granted habeas corpus relief to the appellee, relator, Edward Henderson, who is confined to a correctional institution at Philadelphia. A one to ten year sentence had been imposed in the County of Montgomery, charging burglary, larceny and conspiracy to commit burglary.

The District Court granted the petition of Henderson because the search warrant signed by Detective Ryan was defective since it did not contain facts to support probable cause for its issuance. We disagree.

In deciding the unconstitutionality of the search, the judge stated that the warrant issued for the search of the appellee's car after his arrest did not meet the requirements of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1968) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The police officer who signed the statement of probable cause had received information from a confidential source that appellee and an accomplice were committing burglaries in the Philadelphia area. This statement further recited that appellee had a record of 17 arrests, 4 for burglary, and his accomplice had a record of 9 arrests, 7 of which were for burglary. Surveillance of both of them followed. After a motor vehicle chase, the accomplice was arrested. Henderson's arrest followed. An acplication was then made for a warrant to search Henderson's car. The search produced two flashlights, three screwdrivers, a pair of ice grips, a pair of gloves, a license tag other than the one which was issued to the vehicle, and a mink jacket, which was introduced into evidence at the trial after a motion to suppress was denied.

As has been mentioned, the court below found that the statement supporting the application for a warrant was defective because: (1) it contained no information establishing the reliability of the informant; (2) it was devoid of facts explaining the underlying circumstances of the informant's information, and (3) the police officers' corroborating information was insufficient to raise the informant's tip to the level of *Spinelli* and *Aguilar*, supra.

We have reviewed the record carefully and considering the affidavit in its entirety, we are of the opinion that probable cause did exist for the issuance of the search warrant, based upon the corroboration of the informant's tip by subsequent police investigation. See Drap-

er v. United States, 358 U.S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States (1948) 338 U.S. 160 at page 175, 69 S.Ct. 1302 at page 1310, 93 L.Ed. 1879:

" * * * Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L. Ed. 543" (1924).

The order of the District Court granting the petition for a writ of habeas corpus on terms therein stated will be reversed and the cause remanded to the District Court with directions to enter an order denying the petition.

BIGGS, Circuit Judge (dissenting).

In my view, the majority has failed to follow the rules pertaining to the validity of search warrants as enunciated by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Henderson was indicted, tried and convicted of burglary[1], larceny,[2] and conspiracy to commit burglary,[3] in the Court of Oyer and Terminer of Montgomery County, Pennsylvania, on June 24, 1966 and sentenced on April 21, 1967 to a term of one to ten years.[4] After the Pennsylvania Superior Court quashed Henderson's appeal, the Pennsylvania Supreme Court affirmed.

On May 13, 1969, Henderson filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. On September 23, 1969, the Court granted the writ on the theory that "the search warrant subscribed to by Detective Ryan was constitutionally defective. * * * " The application for a warrant requested permission to search a "1959 Lincoln Conv. painted white, Pa. 82419 P" owned by Henderson. The search revealed, among other items, a mink jacket with the initials "L.H.A." imprinted on the lining. It was later determined that this mink jacket was stolen from the residence of Mrs. Louise Altman at 1405 Paper Mill Road in Springfield Township. Mrs. Altman testified that the jacket found in Henderson's automobile was owned by her. Henderson made a timely motion before trial to suppress the introduction into evidence or the reference to all items[5] seized by the police from his automobile. This motion was denied and this evidence was later introduced at trial.

In order to determine whether the trial court erred in denying the motion to suppress, it is necessary to examine the statement of probable cause provided to the magistrate who issued the search warrant:

"The assigned received information from a confidential source to the effect that Edward Henderson PP # 27,4778 who has a record of 17 arrests, 4 of which are for burglary and Raymond Mann PP # 272931 who has a record of 9 arrests 7 of which are for burglary were committing burglaries in the greater Phila. area. The undersigned did personally observe Mann on Wed. 12-22-65 pick up Henderson at his residence 4506 N. Hicks St. On 12-29-65 the assigned again observed Mann, coming out of a tap

1. 18 P.S. § 4901.

2. 18 P.S. § 4807.

3. 18 P.S. § 4302.

4. Although Henderson was also indicted for receiving stolen goods (18 P.S. § 4817), the Trial Judge directed a not guilty verdict on this count.

5. Aside from the mink jacket, the search produced two flashlights, three screwdrivers, one pair of brown work gloves, one pair of ice grips, one license tag other than the one issued to the Lincoln. At trial, there was some evidence tending to establish that one of the seized screwdrivers had been used to gain entrance to the Altman residence.

room on the S.W. corner of 15th and Wingohocking St. in company with Henderson, Mann got into his car alone and left the vicinity. On Dec. 30th, 1965 the assigned in company with Det. Snyder # 715, MCD, observed the subjects car mentioned above parked on Wingohocking St. east of 15th St. also observed parked on 15th St. north of Wingohocking St. a 1960 Rambler Sdn. Pa. 454-44P this car being the one used by Mann. At 5:30 P.M. 12/30/65 observed Henderson & Mann come out of tap room SW 15th & Wingohocking Sts. get into their respective cars a mobile surveillance was conducted which led to Springfield Twnsp. at which location the Rambler was observed parked on Harston La. at 7:15 P.M. the Lincoln Snd. [sic], was drive [sic] up to the Rambler Sdn. Pa. 45544 P [sic], stop and allow Raymond Mann to get out he in turn got into the Rambler and both cars made "U" turns and drove out of Harston La. turning at the corner and going opposite directions. Agt. Arbury Williams, Plcmn. James Boyle and Det. Snyder stopped Mann after a short chase at Franklin Rd. & Bethlehem Pike. All of the above actions indicate to the assigned that the person's [sic] mentioned were in the process of committing a burglary or were coming from a burglary.

/s/ John F. Ryan

Detective #760, Major Crimes Div."

Detective Snyder testified at trial that while following Henderson's and Mann's cars on December 30, 1965, he observed them looking up at the houses along the road. In appellant's brief appears the statement that the "informant was personally known to both Detective Ryan and his coworker Detective Charles Snyder * * * as a reliable informant since he had acted as a confidential source of information on previous occasions and said information proved reliable." Neither this statement nor the aforementioned testimony are of any value in determining whether the warrant was based on probable cause, for the information contained therein does not appear within the search warrant itself and it does not appear from the record that these matters were brought to the magistrate's attention Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Thus, the question of whether probable cause existed must be answered by comparing the affidavit in the instant case with the standards set forth in *Aguilar* and *Spinelli, supra.*

Mr. Justice Goldberg, speaking for the Court in *Aguilar,* stated what is now often called *Aguilar's* two-pronged test:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the * * * [law had been violated or was being violated], and some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.'" 378 U.S. at 114, 84 S.Ct. at 1514 (Footnote omitted.)

It is clear that the informant's tip in the instant case is inadequate under the two-pronged test for (1) there is not even a bold assertion in the warrant that the confidential informant was reliable, let alone a statement of the underlying circumstances from which Detective Ryan concluded that he was "reliable" or "credible" and (2) there is no statement of the underlying circumstances from which the informant concluded that Henderson was committing burglaries in the greater Philadelphia area. The affidavit does not even indicate if the informant had personal knowledge of the burglaries or if he came by the information indirectly. Finally, the "tip [does not] describe the accused's criminal activity in sufficient detail that the magistrate may know that he [the informant] is relying on something more substantial than a casual rumor circulating in the underworld or an accusation

based merely on an individual's general reputation." *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. at 589.

Although the informant's tip is clearly deficient under *Aguilar,* it is still necessary to ascertain whether the affidavit meets the test set forth in *Spinelli* for affidavits based on an informant's tip *and* personal knowledge of the affiant:

> "If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? *Aguilar* is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone." 393 U.S. at 415–416, 89 S.Ct. at 588–589.

In the case at bar, the other allegations (aside from the statement of the informant's tip) do not support both the inference that the informant was generally trustworthy and that the informant had obtained his information in a reliable

way. These allegations show only that the affiant followed Henderson and Mann in their respective cars from a Philadelphia taproom to Springfield Township. Mann's car was later seen parked on Harston Lane in Springfield Township. The affiant observed Henderson drop Mann off at his car and watched both cars leave the scene. I agree with the District Court that these activities are "entirely consistent with lawful conduct on the part of both men" and that they fail to adequately corroborate the informant's tip. The only other allegation in the affidavit is a statement that several police officers stopped Mann after a short chase. But even this allegation fails to adequately corroborate the informant's tip for there is no statement in the affidavit that Mann was trying to escape from the police officers.[6] Even if it can be inferred from this allegation that Mann was trying to escape from the police, this does not adequately corroborate the tip that Henderson was committing burglaries, although admittedly, it is one of many possibe inferences. Another inference is that Mann thought that the police had no reason to stop him and were thus attempting to make an unlawful arrest.

It should also be noted that at the date of application for the search warrant, the affiant had no knowledge of the burglary occurring at 1405 Paper Mill Road. Thus, this information, which did not appear in the search warrant, cannot be used to corroborate the informant's tip. Finally, the recitation in the affidavit of Henderson's arrests does not by itself corroborate the tip.

I conclude, then, that the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. In *Spinelli,* itself, the allegations detailing the FBI's independent in-

---

6. In both the motion to suppress evidence and the trial, there was testimony that one Sergeant Williams of the Springfield Township Police Department attempted to stop Mann's approaching vehicle by blocking an intersection and that Mann's car was able to elude this road block. None of this information was, however, provided in the affidavit and, as previously indicated, is legally insignificant in determining the existence of probable cause.

vestigative efforts were a great deal more corroborative of the informant's tip that "Spinelli [was] operating a handbook and accepting wagers and disseminating wagering information" by means of two assigned telephone numbers than are the allegations in the instant case.

For all of the above reasons, I would affirm the order of the District Court granting the writ of habeas corpus.