**UNITED STATES of America, Appellee,**

v.

**Raymond MADDOX, Appellant.**

**No. 11880.**

United States Court of Appeals Fourth Circuit.

Argued April 4, 1968.

Decided April 29, 1968.

---

8.   In Re Osborne, 344 F.2d 611, 616 (9 Cir. 1965).

Benjamin L. Brown, Baltimore, Md. (John R. Hargrove, and Howard & Hargrove, Baltimore, Md., on brief), for appellant.

Paul M. Rosenberg, Asst. U.S. Atty. (Stephen H. Sachs, U.S. Atty., on brief), for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge:

Primarily on the strength of the testimony of a confessing accomplice, defendant was convicted under 18 U.S.C. §§ 2, 659 of the theft from a Baltimore warehouse of 24 one hundred-pound bags of sugar, worth more than $100. His appeal raises two issues: (1) whether the evidence was sufficient to connect him with the theft, and (2) whether, at the time of the theft, the stolen goods constituted a part of an interstate or foreign shipment.[1]

Landborn Company, a sugar broker and sole agent for the sale of Hi-Glo sugar in the United States, with principal offices in New York City, regularly purchased large quantities of sugar through an agent in Puerto Rico. The size of each order depended on the anticipated needs of its various customers who would enter into purchase agreements months before the actual delivery. The price was determined at the time of the contract, and was unaffected by any subsequent market fluctuations. Pursuant to their contracts, the customers were then obligated to arrange for the delivery of their orders within an agreed period from the date of arrival at the port of Baltimore.

Customarily, sugar was shipped to Landborn as consignee, the waybills carrying the notation "Order of Shipper notify—Landborn and Company, 99 Wall Street, New York 5, N. Y." After the ships docked in Baltimore, and the sugar for the region was unloaded, 40% to 60% of each shipment was picked up by regular customers directly from the pier, under release orders from Landborn. Of the remainder, which would be removed from the pier and temporarily stored in the Phillips Brothers Warehouse in Baltimore, approximately 70% was held to meet pre-existing contracts with buyers serviced by the port of Baltimore. While the precise number is unknown, appellant admits that "many" of the predetermined buyers were located in the surrounding states of Virginia, West Virginia, and Pennsylvania and the District of Columbia.

An investigation by the manager of the Phillips Brothers Warehouse disclosed a shortage in the sugar inventory, and shortly thereafter a fellow employee at the warehouse confessed his complicity and implicated appellant in the theft. The accomplice, Franklin Williams, testified that he was approached by defendant and asked if he did any "hustling." He further stated that he assisted defendant in loading bags of sugar on defendant's

---

[1]. In revelant part section 659 reads as follows:

"Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any railroad car, wagon, motortruck, or other vehicle, or from any station, stationhouse, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express; * * *."

truck and estimated that over a three month period Maddox removed approximately 220 bags, which corresponds very closely to the number found to be missing.[2]

As to the sufficiency of the evidence, appellant contends that since Williams was an accomplice, his testimony, while admissible, must be closely scrutinized. In this connection, he points to the fact that Williams gave several contradictory statements.

■ In federal prosecutions, the testimony of an accomplice may be sufficient to sustain a conviction even though not corroborated, if it generates a belief beyond a reasonable doubt. Gormley v. United States, 167 F.2d 454 (4 Cir. 1948); Pittsburgh Plate Glass Company v. United States, 260 F.2d 397 (4 Cir. 1958). In the instant case, however, the District Judge who tried the case without a jury had more than Williams' testimony on which to base a finding of guilt. His story was corroborated in some measure by three warehouse employees who testified that they had been approached by the defendant with offers to pay them money if they would help load bags of sugar on his own truck. Also, the conversation between Maddox and one of these employees was overheard by a third person who testified at the trial.

■ That Williams gave various inconsistent statements during the period of investigation did not compel the trial judge to disregard his entirely consistent in-court testimony. It is not uncommon for the confessor of a crime at first to deny all knowledge, and then reveal the truth in stages. Such contradictions merely reflected on the accomplice's credibility and were carefully weighed by the trier of fact.

■ In these circumstances, we conclude without hesitancy that the evidence fully supported the trial court's finding.

More troublesome is the defendant's contention that the shipment had come to rest when the sugar was taken to the warehouse and thereby lost its character as interstate or foreign commerce. Defendant argues that Landborn as consignee and owner of the sugar could do with it as he saw fit and stresses the fact that the individual bags were not earmarked for any particular buyer, in or out of the state.

The Government, on the other hand, maintains that the storage in Phillips Brothers Warehouse constituted merely a temporary interruption in the flow of commerce from producer in Puerto Rico to predetermined buyers in Maryland and the surrounding states. It characterizes the Landborn Company as essentially an interstate dealer in sugar which merely retained the imported merchandise until final delivery to interstate buyers could be effected. Since the product is fungible, the Government attaches no significance to the fact that the individual bags were not held for specific customers.

■ The deposit of cargo in a warehouse may under certain circumstances constitute a coming to rest, marking the termination of an interstate or foreign shipment. At other times, however, the stop-off at the warehouse may be only a pause in the course of an uncompleted journey. Standing alone, the removal of goods to a warehouse is not conclusive; nor is the consignee's power to divert the goods from the intended interstate commerce. See Champlain Realty Company v. Town of Brattleboro, 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309 (1922). These are merely factors to be considered, but there is no rigid rule of law that mandates a holding either way. The answer in any particular case must depend on a factual assessment.

■ In analyzing this record, we are mindful of the Supreme Court's observation in Swift & Co. v. United States,

---

2. The scheme was to steal periodically a skid of sugar containing 24 bags. As noted earlier, defendant was charged only with stealing one skid, or 24 bags, on or about June 7, 1966.

196 U.S. 375, 398, 25 S.Ct. 276, 280, 49 L.Ed. 518 (1905) that "commerce among the states is not a technical legal conception, but a practical one, drawn for the course of business," and of the broad interpretation given the statute in other circuits. Sterling v. United States, 333 F.2d 443 (9 Cir. 1964); United States v. Berger, 338 F.2d 485, 487 (2 Cir. 1964); United States v. D'Antonio, 342 F.2d 667 (7 Cir. 1965). In our view it does not unduly stretch the concept of a continuing, though interrupted, shipment in commerce to apply it here, where sugar, purchased in Puerto Rico, was shipped to Baltimore and held temporarily in a warehouse pending final delivery to buyers in other states in fulfillment of orders previously given. There is no absolute requirement that the flow of commerce be continuous if there is the clear intention to resume the journey after a brief pause. The District Judge's findings are not clearly erroneous and the judgment is

Affirmed.