UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph John YOPPOLO, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William Edson KELLY, Defendant-
Appellant.

Nos. 20397, 20398.

United States Court of Appeals,
Sixth Circuit.

Dec. 16, 1970.

Jas. Slater Gibson, Toledo, Ohio, for appellants.

William M. Connelly, Toledo, Ohio (Robert B. Krupansky, U. S. Atty., Toledo, Ohio, on the brief), for appellee.

Before PHILLIPS, Chief Judge, WEICK and BROOKS, Circuit Judges.

WEICK, Circuit Judge.

Appellants were convicted by a jury in the District Court of conspiracy to receive, conceal and possess 851 cases of Cutty Sark Scotch whiskey valued at $72,000, which had been stolen at Toledo, Ohio, while moving in foreign commerce from Glasgow, Scotland to Cincinnati, Ohio, and were convicted of the substantive offense of possession of the stolen whiskey. 18 U.S.C. §§ 371 and 659.

They were sentenced to fifteen years' imprisonment, and would become eligible for parole under 18 U.S.C. § 4208(a) (2) at such time as the Board of Parole may determine.

■ The principal ground of error argued on the appeal was that at the time the whiskey was stolen it was not moving in interstate or foreign commerce, but had been delivered to the consignee, and hence the shipment had come to rest and no federal law was violated. The trouble with this argument is that it lacks evidentiary support.

The stolen whiskey was part of a large order of 11,745 cases, the order having been placed by the Department of Liquor Control of the State of Ohio with one of its vendors, the Buckingham Corporation of New York, which was the sole distributor for Cutty Sark in the United States.

The shipment moved under a "Head Line" bill of lading in which the shipper was Berry Brothers & Rudd Ltd., and the consignee was the Buckingham Corporation, Toledo, Ohio. The ocean vessel was the Carrigan Head. The Port of Loading was Glasgow; the Port of Discharge was Toledo. The number of packages shipped was eighteen. The address on each case of whiskey was Department of Liquor Control, State of Ohio. The ship arrived in Toledo on May 7, 1968.

Ceres, Inc., a stevedoring firm, unloaded the cargo pursuant to a delivery order issued by Transworld Shipping Service as agents for Buckingham Corporation, and had it delivered by East Side Cartage Company to the freight yard of Toledo Foreign Trade Zone Operators Inc., Toledo, Ohio. The Toledo Foreign Trade Zone issued a shipping order for 850 of the cases [1] to Ohio Delivery Inc., a trucking concern to transport the whiskey to the warehouse of the Department of Liquor Control in Cincinnati, Ohio. The Toledo Foreign Trade Zone was acting under a contractual arrangement with the Department of Liquor Control. The shipment was checked and loaded on a trailer of Ohio Delivery in the freight yard of the Toledo Foreign Trade Zone, and the trailer was sealed.

On the morning following the loading, a driver for Ohio Delivery drove a tractor to the yard of Toledo Foreign Trade Zone to pick up the loaded trailer and move it to Cincinnati, but found the trailer was missing. It had been stolen.

From the foregoing, it is obvious that there was a continuous movement of the shipment from Glasgow to Cincinnati, the only interruption being for the purpose of unloading the vessel, loading a trailer and transporting part of the shipment to Cincinnati. The ultimate consignee, namely the Department of Liquor Control, never received the shipment. It was stolen in transit.

■ An interstate or foreign shipment does not lose its characteristic until it arrives at its final destination and is there delivered. Winer v. United States, 228 F.2d 944 (6th Cir.), cert. denied, 351 U.S. 906, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). See also United States v. May, 419 F.2d 553 (8th Cir. 1969); United States v. Maddox, 394 F. 2d 297 (4th Cir. 1968).

In *Maddox, supra,* the court said:

"There is no absolute requirement that the flow of commerce be continuous if there is the clear intention to resume the journey after a brief pause." *Id.* at 300.

We find no merit in appellants' contention.

Appellants next contend that court exhibits which had not been received in evidence, consisting of transcripts of grand jury testimony of government witnesses, which transcripts were used by defense counsel extensively during his cross examination of these witnesses, were sent to the juryroom along with

1. Another case was added later.

the other exhibits. This issue was raised for the first time in the motion for a new trial filed by the defendants.

It was not claimed that government counsel had any knowledge that these exhibits had been sent to the juryroom. Defense counsel disclaims knowledge of this fact. It would appear that the exhibits were sent to the juryroom probably through inadvertence.

It seems to us that when a case is ready for submission to the jury, counsel for both parties should look over all the exhibits to make sure that no exhibit which has not been admitted in evidence will be sent into the juryroom. They ought not to leave this task solely to the clerk.

In any event, we find that in these cases no prejudice resulted to the defendants. Their counsel used these exhibits extensively in cross examination of government witnesses and the jurors had a pretty good idea of what the transcripts contained.

Appellants further contend that the general sentence of fifteen years on both counts, without specifying the sentence on each count, was not a legal sentence. The sentence which was imposed did not exceed the maximum which could have been imposed had sentence been pronounced severally on each count.

Although the imposition of a general sentence in multi-count convictions has been often criticized, and we do not approve it, such a sentence has been repeatedly upheld. Peoples v. United States, 412 F.2d 5, 6–7 (8th Cir. 1969); Davis v. United States, 269 F.2d 357, 363 (6th Cir.), cert. denied, 361 U.S. 919, 80 S.Ct. 256, 4 L.Ed.2d 187 (1959); Jackson v. United States, 234 F.2d 605, 606 (6th Cir. 1956). We do not believe that any good purpose would be served by remanding these cases to have the District Court specify the sentence on each count.

We have considered other questions which have been raised, but do not believe they merit discussion.

Affirmed.