475 F.2d 157
 UNITED STATES of America
v.
Herbert Martin GIMELSTOB, Appellant in No. 72-1625, et al.
Appeal of Victor FRIEDLANDER, in No. 72-1622.
Appeal of Leonard SHERMAN, in No.
72-1623. Appeal of Joseph
TREMARCO, in No. 72-1624.
 Nos. 72-1622 to 72-1625.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 7, 1972.
Decided Feb. 21, 1973.
 
 Michael A. Querques, Querques, Isles & Weissbard, Orange, N. J., for Friedlander.
 Yale Manoff, Weinberg & Manoff, Springfield, N. J., for Sherman.
 Myron P. Maurer, Maurer & Maurer, Newark, N. J., for Tremarco.
 Raymond A. Brown, Brown, Vogelman, Morris & Ashley, Jersey City, N. J., for Gimelstob.
 Herbert J. Stern, U. S. Atty., John J. Barry, James D. Fornari, Richard S. Zackin, Melvin Greenberg, William A. Carpenter, Asst. U. S. Attys., Newark, N. J., for appellee.
 Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 The central element in this case was a conspiracy to steal certain tin ingots from a warehouse in Port Newark, New Jersey, in violation of 18 U.S.C. Sec. 659.
 
 
 2
 There were four counts to an indictment which named appellants and other defendants not revelant to this case. The charges relating to appellants are as follows: all four appellants were charged with violating 18 U.S.C. Sec. 659 by conspiring to take, steal, and carry away goods in foreign commerce with the intent to convert these goods to their own use (Count I). They were also charged with violating Sec. 659 by possessing goods which they knew to be stolen (Count III).[1] Appellants Gimelstob and Tremarco alone were charged with assaulting, opposing, impeding and interfering with an FBI agent in violation of 18 U.S.C. Sec. 111 (Count IV). After the district court granted appellant Gimbelstob's motion for a judgment of acquittal as to the first violation of Sec. 659, a jury found all appellants guilty as charged. Appellants present a plethora of purported errors, none of which require reversal. Having rejected them en masse, we will proceed to reject them seriatim. Facts will be developed when necessary.
 
 I. THE SEIZURE OF THE STOLEN TIN
 
 3
 All four appellants contend that the FBI's seizure of the stolen tin was improper because the affidavit supporting the search warrant was legally insufficient. The warrant in question met the standards set out by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968). Aguilar set up a two-pronged test to determine the sufficiency of a warrant which is based on tips from a confidential informer: (1) the warrant must show that the informer is credible, and (2) some of the underlying circumstances giving rise to the informer's conclusions must be present. In this case, the warrant alleged that the informer relied upon had previously disclosed information leading to at least five convictions; and FBI surveillance provided sufficient corroboration for the informer's conclusions. See Spinelli v. United States, supra at 417-418, 84 S.Ct. 1509. United States ex rel. Henderson v. Mazurkiewicz, 443 F.2d 1135 (3d Cir. 1971); United States v. Singleton, 439 F.2d 381 (3d Cir. 1971); United States ex rel. Kislin v. State of New Jersey, 429 F.2d 950 (3d Cir. 1970). Only a probability of criminal activity is necessary for there to be probable cause, see, e.g., Spinelli v. United States, supra, 393 U.S. at 419, 84 S.Ct. 1509, and here the affidavit for the search warrant showed such a probability.
 
 II. IMPROPER JOINDER
 
 4
 Appellants Sherman and Friedlander argue that it was improper under Rule 8 of the Federal Rules of Criminal Procedure to join the charges against appellants Tremarco and Gimelstob for assaulting an FBI agent with the charges against them on the conspiracy counts. In the alternative, they argue that if joinder was permissible, a severance under Rule 14, Fed.R.Crim.Proc., should have been granted. There is no merit in these arguments. The assault on the FBI agent was clearly related to the conspiracy charges, and Rule 8(b), Fed.R.Crim.Proc., does not require that each defendant be named in each count, so long as the offenses are related. See 8 Moore's Federal Practice, Sec. 8.06 (Cipes ed. 1972). I Wright, Federal Practice and Procedure, Sec. 144 (1969).
 
 
 5
 Nor was it improper for the district court to deny appellants' motion for severance under Rule 14. This motion is addressed to the discretion of the trial court, and appellants have not demonstrated the type of prejudice necessary for us to say that the district court abused its discretion. See 8 Moore's Federal Practice, supra Sec. 14.02 . I Wright, Federal Practice and Procedure, supra Sec. 227.
 
 III. TESTIMONY OF THREATS TO A WITNESS
 
 6
 A government witness who had been involved in the conspiracy testified that he had been threatened with harm by appellant Friedlander if he were to talk. The witness testified that Friedlander did not state the exact nature of the harm that would occur, but that the witness understood, from previous conversations with Friedlander, that Friedlander meant that he would be killed. In fact, an attempt was made on the life of the witness, allegedly by appellant Tremarco. However, this attempt was not disclosed to the jury.
 
 
 7
 Appellants Friedlander, Sherman, and Tremarco agree that testimony of the threat itself was properly admitted, but contend that the district court should not have allowed the witness to explain the nature of the harm that would come to him. On the basis of this testimony and an aborted question,[2] they further argue that the jury was able to infer that the attempt on the life of the witness had been made. They present no authority for this argument.
 
 
 8
 There is no merit in the contention. The statements as to the kind of harm were relevant to the precise nature of the threats and also tended to establish Friedlander's guilt. This testimony plus the unfinished question do not lead to the inference that appellants claim that the jury made. Additionally, at that time the district court instructed the jury to disregard the fragment of the question asked and in his jury charge gave a general instruction for them to disregard everything he had previously excluded.IV. ADMISSIBILITY OF A CARD SEIZED FROM TREMARCO
 
 
 9
 FBI agents seized a card from appellant Tremarco's wallet upon his arrest. This card contained various phone numbers, including two unlisted numbers of appellant Gimelstob. Tremarco now claims that this card was improperly seized because the government failed to establish that at the time of its seizure there was a probability that it could be evidence leading to a conviction or an apprehension of others. Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).
 
 
 10
 Admission of the card was not error. It was logical for the FBI to believe that the phone numbers on the card could disclose further participants in the conspiracy or show a connection between Tremarco and the other defendants. And furthermore, this argument seems "much ado about nothing" since the card is of absolute minimal importance. Its lack of significance combined with the weight of the government's evidence leads us to the conclusion that any error in its admission would clearly be harmless beyond a reasonable doubt under the Supreme Court's test in Milton v. Wain-wright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 V. "MUG SHOT" OF TREMARCO
 
 11
 Appellant Tremarco contends that it was improper for the district court to allow a "mug shot" (screened to hide identifying marks) into evidence against him. He claims that this impermissibly placed his prior criminal record before the jury. He relied on Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966), but that case is distinguishable from his.[3] Our task is to decide whether the district court properly determined that the probative value of the mug shot outweighed whatever prejudicial effects that it had. E. g., Hines v. United States, 470 F.2d 225 (3d Cir. 1972).
 
 
 12
 In Barnes, there was an in-court identification. No mention of a photographic identification was made on direct examination. Defense counsel chose not to argue to the court that the identification procedures violated Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1969), but, instead, he cross-examined the witness concerning a pretrial photographic identification. While "photographs" were mentioned freely, there was no description of them as "mug shots."
 
 
 13
 On redirect examination, the government attorney introduced into evidence two photographs of Barnes which the witness had viewed. While one was a normal snapshot, another was a mug shot. There was tape over the prison numbers on the photograph, and the trial judge emphasized that it covered something detrimental by commenting to the jury that he feared that one of them might inadvertently remove it and see the markings. The court held that the introduction of this "mug shot" improperly placed the defendant's prior criminal record before the jury even though it was the defense who had first brought out the photographic identification. The court emphasized that the prosecutor could have buttressed the testimony of his witness on redirect examination by introducing solely the snapshot and thus avoiding the prejudice inherent in introducing the mug shot. Furthermore, it does not appear that the defense inquiry in Barnes focused on the appearance of the appellant in pictures which the witness was shown. It instead concentrated on the fact that the identifying witness had been shown only pictures of appellant.
 
 
 14
 There are similarities to Barnes in this case. An FBI agent made an incourt identification of appellant on direct examination, and no mention of photographs was made. He testified that he had seen appellant near the garage to which the stolen tin had been transported. There was no attempt to suppress the agent's identification, and on cross-examination the defense attorney brought out the fact that the witness had made a previous photographic identification of appellant. The attorney was particularly concerned with how appellant was dressed, both at the time he was seen by the agent and in the photograph that was shown to the agent. He was attempting to prove that the agent had identified appellant only because appellant had a white tee shirt on in his picture and because the man the agent had seen at the garage also had a white tee shirt on. The following line of questioning occurred:
 
 
 15
 "Q. In this photograph was he wearing a white undershirt?
 
 
 16
 "A No sir, not that I recall.
 
 
 17
 "Q Do you remember what he was wearing in the photograph?
 
 
 18
 "A As I recall it was a facial photograph. It was not a photograph of an entire person.
 
 
 19
 "Q Did it have his shoulders showing?
 
 
 20
 "A Not that I recall, no, sir.
 
 
 21
 "Q Just from the chin up, the neck?
 
 
 22
 "A No, from the chest area. It was a mug-type photograph. [Emphasis added].
 
 
 23
 "Q Yes, so that from the chest up you would see his shoulders?
 
 
 24
 "A Yes, sir.
 
 
 25
 "Q And if he wore a white undershirt that would be shown clearly in the photograph, would it not?
 
 
 26
 "A Yes, sir.
 
 
 27
 "Q Because the shoulders would be bare, is that right?
 
 
 28
 "A Yes, sir.
 
 
 29
 "Q Do you recall whether he had a white undershirt on in that photograph?
 
 
 30
 "A No, sir, I don't." (Appendix, 1237, 1238).
 
 
 31
 On redirect, the government was allowed to introduce the photograph of appellant into evidence. Although the masking of the identification marks was much less obtrusive in this case than it was in Barnes and the district court judge's handling of the photographs must less prejudicial, there are other more significant differences between the cases.
 
 
 32
 The fact that the photograph viewed was a "mug-type" photograph was already before the jury in response to defense questioning. Since what was shown to the jury was a mug-type photograph, i. e., there were no prison numbers or other marks present, the jury knew no more than they had before as a result of the defense questioning. They already had been alerted by appellant that he had either been in trouble with the police or had had a prison record. Additionally, appellant's attorney had left with the jury the agent's statement that he was unsure how appellant had been dressed in the photograph. It was proper for the agent to show the jury that appellant had not been dressed in a tee shirt in the picture. United States v. Guinn, 454 F.2d 29, 37 (5th Cir. 1972). The government attorney did not have the ready alternative available to him that the government attorney had available in Barnes. The probative value of the picture here outweighed whatever prejudicial effects, if any, the introduction of the photograph involved. See Hines v. United States, supra; United States v. Frascone, 299 F.2d 824, 828, 829 (2d Cir. 1962).
 
 VI. SUMMATION BY UNITED STATES ATTORNEY
 
 33
 Appellants Friedlander and Tremarco contend that certain remarks[4] on summation by the government attorney amounted to an unconstitutional comment on their failure to take the witness stand in violation of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). After having examined the prosecutor's statement and the defense summation argument which prompted it, we conclude that his comment cannot reasonably be so construed. See, e.g., United States v. Giuliano, 383 F.2d 30 (3d Cir. 1967); United States ex rel. Leak v. Follette, 418 F.2d 1266 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). He very briefly addressed himself solely to the failure of appellant's counsel to cross-examine a government witness on a certain issue. This and the fact that the government attorney's remark was prompted by an attack on his witness's credibility by defense counsel in summation both serve to distinguish this present case from the First Circuit's decisions in United States v. Flannery, 451 F.2d 880 (1st Cir. 1971) and Desmond v. United States, 345 F.2d 225 (1st Cir. 1965). See United States v. Giuliano, supra, 383 F.2d at 35.
 
 
 34
 VII. JURY CHARGE AS TO POSSESSION AND GUILTY KNOWLEDGE
 
 
 35
 Appellants Tremarco and Gimelstob contend that the district court erred in its charge to the jury on the issue of constructive possession relevant to Count III of the indictment which charged appellants with possession of property stolen from interstate commerce. After having examined the charge of the court in its entirety, we are convinced that there was no error.
 
 
 36
 Tremarco and Gimelstob also argue that there was insufficient evidence to convict them on this count. Since there was sufficient evidence to convict them under 18 U.S.C. Sec. 2 as aiding and abetting an offense we do not have to consider this claim. See Long v. United States, 124 U.S.App.D.C. 14, 360 F.2d 829, 835 (1966) (Burger, J.); United States v. Minieri, 303 F.2d 550, 557 (2d Cir. 1962).
 
 VIII. JURY CHARGE AS TO 18 U.S.C. Sec. 111
 
 37
 Appellants Tremarco and Gimbelstob claim that the district court was incorrect to refuse to charge that under 18 U.S.C. Sec. 111, it is necessary for the actor to know that the person interfered with was a federal officer.
 
 
 38
 We have held that such knowledge is not necessary for a person to be convicted under Sec. 111. United States v. Goodwin, 440 F.2d 1152 (3d Cir. 1971). Accord, e.g., United States v. Ulan, 421 F.2d 787 (2d Cir. 1970); United States v. McGough, 410 F.2d 458 (4th Cir. 1969); United States v. Marcello, 423 F.2d 993, 1010 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); United States v. Leach, 429 F.2d 956, 959 (8th Cir. 1970); United States v. Kartman, 417 F.2d 893 (9th Cir. 1969).
 
 
 39
 Appellant Gimelstob also argues that the district court defined assault incorrectly in its charge. However, we do not have to consider that question since there was ample evidence that the agent in this case was forcibly opposed, impeded, and interfered with. Therefore the conviction must be affirmed since "the general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Turner v. United States, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970).
 
 IX. EFFECT OF GIMELSTOB'S ACQUITTAL
 
 40
 The district court granted appellant Gimelstob's motion for a judgment of acquittal as to the charge that he had conspired to steal, take, or carry away tin from foreign commerce. Gimelstob now argues that the jury should have been instructed of this fact since otherwise it would use evidence on that ground against appellant when it considered the other charges against him. He also contends that the district court should have marshalled and segregated the evidence as to him in its charge.
 
 
 41
 This circuit had held that it is necessary to object at trial to the district court's failure to marshall evidence against an appellant. United States v. Kenny, 462 F.2d 1205, 1228, 1229 (3d Cir. 1972). Accord, United States v. Armone, 363 F.2d 385 (2d Cir. 1966). Since appellant did not object at trial, he cannot raise this argument in the absence of plain error. Rule 52(b), Fed.R.Crim.Proc. Under the circumstances of this case, we do not think that such error, if any existed. Compare United States v. Kelly, 349 F.2d 720, 758, 759 (2d Cir. 1965).
 
 
 42
 The district court instructed the jury that Gimelstob had been severed (instead of acquitted) as to Count I. Appellant's contention that instead it should have said he was acquitted is unsupported by legal authority, and we dismiss it.
 
 
 43
 X. JURY CHARGE AS TO CREDIBILITY OF WITNESSES
 
 
 44
 All appellants except Gimelstob contend that the district court's jury charge was unfair because it had the effect of taking away appellants' presumption of innocence. After examining the district court's charge as a whole, we can state that it was eminently fair. Its charge was not at all similar to the one in United States v. Garza, 426 F.2d 949, 954 (5th Cir. 1970) upon which appellants rely.
 
 XI. SUFFICIENCY OF EVIDENCE
 
 45
 Appellants Friedlander, Sherman and Tremarco contend that the government did not prove that they were part of a conspiracy to carry away tin from foreigh commerce, as charged in Count I of the indictment. Apparently, they argue that since the government did not demonstrate that they actually participated in the physical removal of the tin, they could not be proven guilty.
 
 
 46
 Viewing the evidence in a light most favorable to the government, we are convinced that it did establish that appellants were part of a continuing conspiracy to carry away and distribute the tin. See United States v. McGann, 431 F.2d 1104 (5th Cir. 1970), cert. denied 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971); Nassif v. United States, 370 F.2d 147 (7th Cir. 1966). While once a conspiracy has been established only slight evidence is necessary to support a jury verdict that an individual defendant was a member, see, e.g., United States v. Kenny, supra, 462 F.2d at 1226, there was a great deal of evidence to support the involvement of appellants in this case.
 
 XII. FOREIGN COMMERCE
 
 47
 All of the appellants contend that the government did not establish that the tin was in foreign commerce at the time it was stolen. This contention also must fall. On this issue, each case must be evaluated on its own particular facts. In reaching a determination on whether an item is still within foreign commerce at a given time, one must examine the relationship between the consignee, the consignor, the carrier, the indicia of foreign commerce at the time of the theft and the congressional intent. See United States v. Cousins, 427 F.2d 382, 385 (9th Cir. 1970); United States v. Maddox, 394 F.2d 297 (4th Cir. 1968). The evidence showed that although the tin had reached port and been unloaded to a warehouse, it was still being held by the shipper under the original bills of lading. "An interstate or foreign shipment does not lose its characteristic until it arrives at its final destination and is there delivered." United States v. Yoppolo, 435 F.2d 625, 626 (6th Cir. 1970). Here, where the tin had not yet been picked up and was still being held by the shipper under its original bills of lading, delivery had not yet occurred.
 
 
 48
 Appellants Friedlander and Sherman also argue that the district court's charge on this point was incorrect. This contention is also without merit.
 
 
 49
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Count II named a defendant not involved in this appeal
 
 
 [2]
 The jury heard this sentence fragment: "Did there come a time when Victor Friedlander's warning to you on August 31st . . ." Appendix, 1805-1806
 
 
 [3]
 We have, of course, not yet adopted Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966), in this circuit
 
 
 [4]
 The government attorney stated:
 "I have searched the record. If there is any question, ask the Judge to read it to you. At no time Harry Bogin was on that stand that Mr. Querques or any of the other defense counsel saw fit to cross-examine him on the threats. At no time. Those threats stand before you uncontroverted, unquestioned except in summation." Appendix, pg. 3469.