810 F.2d 201
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mike HALL (86-5076), Gordon Moore (86-5078), Defendants-Appellants,
v.
UNITED STATES of America, Plaintiff-Appellee.
 Nos. 86-5076, 86-5078.
 United States Court of Appeals, Sixth Circuit.
 Nov. 11, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Hall was convicted of knowingly receiving three television sets that were stolen while moving in interstate commerce in violation of 18 U.S.C. § 659 (1982). These sets were part of a shipment of 366 stolen from a truck stop in Ohio while being shipped from Illinois to Pennsylvania. Defendant-appellant Moore was convicted for knowingly receiving twenty-six of the television sets in violation of section 659 and 18 U.S.C. § 2315 (1982). We affirm.
 
 
 2
 Both Moore and Hall contend that there was insufficient evidence that they knew the TV's were stolen at the time they purchased them and that the District Court erred in admitting evidence of Moore's possession of other stolen property. In addition, Moore contends that the District Court erred in not giving a jury instruction on the defense of duress. Hall also contends that the District Court erred in allowing testimony that under Kentucky law, recent possession of stolen property is prima facie evidence of knowledge that the property was stolen and in permitting a government witness at trial to place defendants' names next to the serial numbers for the TV's they purchased. Finally, Hall contends that the prosecution engaged in misconduct and that the District Court erred in not instructing the jury to consider whether at the time defendants received the TV's, they were no longer in interstate commerce.
 
 I. MOORE
 A. Sufficiency of Evidence
 
 3
 Moore contends that the District Court erred in overruling his motion for judgment of acquittal because the evidence did not show that at the time he purchased the TV's he knew that they were stolen. Christian, the prosecution's key witness, testified that a couple days after he (Christian) acquired the TV's Moore agreed to purchase twenty-seven TV's in exchange for two used cars and cash. Christian testified that he told all purchasers that the TV's were stolen and did not tell Moore that the TV's were from a train wreck or freight salvage. About a week later, Christian sold thirty more TV's to Moore in return for cash and another used car. Christian testified that he again told Moore that the TV's were stolen and to be careful with them.
 
 
 4
 Moore testified that when Christian first approached him about the TV's, he said he was not interested but that he later changed his mind because of the low prices. Moore testified that Christian told him that he (Christian) acquired the TV's from an adjustor. Moore relies on Christian's testimony that after Moore had had the TV's for some time and sold some of them, Christian told him that another individual had been arrested for possession of some of the TV's. This, according to Moore, proves that he (Moore) did not know the TV's were stolen when he received them from Christian. However, Moore also testified that he sold some of the TV's from his used car lot from a closed truck and had no sign on the lot indicating that he had TV's for sale. Furthermore, Moore testified that he never informed the police or the FBI that the TV's he had were sold to him as salvage.
 
 
 5
 We conclude that the evidence is sufficient to sustain Moore's conviction and the District Court did not abuse its discretion in overruling Moore's motion for a verdict of acquittal.
 
 B. Defense of Duress
 
 6
 Moore claims that the District Court erred in not giving a jury instruction on the defense of duress. He contends that Christian and his friend, Graham, told Moore after Moore received the TV's that they were stolen. At this time, Moore contends that they threatened his family and his life if he did not cooperate with them on an alibi and attempt to get rid of the TV's.
 
 
 7
 Moore's counsel orally requested a duress instruction. The District Court did not abuse its discretion in not giving such instruction because Moore admitted that the alleged threat occured sometime after Moore acquired the TV's. Thus, these threats are not relevant to Moore's knowledge at the time he purchased the TV's from Christian.
 
 
 8
 C. Evidence of Moore's Past Possession of Other Stolen Property
 
 
 9
 Moore contends that the District Court erred in allowing evidence of Moore's past possession of a stolen video cassette recorder (VCR), a personal computer, and automotive testing equipment under Fed.R.Evid. 404(b) to show Moore's knowledge of the stolen character of the TV's. On Moore's cross-examination, the government asked the Court, out of the jury's presence, to permit it to ask Moore about this stolen property. Moore first testified out of the presence of the jury and then the Court granted the government's motion to inquire into the items in the jury's presence.
 
 
 10
 Moore admitted that he purchased the stolen automotive equipment in 1984 but denied that he knew the seller prior to the day of the sale and he denied that the seller told him that the property was stolen. He also denied seeing the "Commonwealth of Kentucky" property identification stickers affixed to the equipment. The prosecution called Day, the man who sold Moore the stolen equipment, as a rebuttal witness. On cross-examination, Day testified that Moore told Day, with respect to the stolen character of the equipment, "don't worry about it; I'll take care of it." Day also testified that on four separate occasions he had sold stolen property to Moore.
 
 
 11
 The VCR and computer were recovered from Moore's house during the search for the TV's. Moore testified that he did not know that the property was stolen and that a man whom he had never seen before offered to sell the equipment because he needed money to pay his bills. Shortly after this testimony, the Court instructed the jury:
 
 
 12
 I did not permit that testimony to come into evidence for the purpose of proving that the Defendant was a person of bad character. I did not permit the evidence to be introduced into evidence as proof that he committed the offense he's charged with in the indictment. The only reason that this evidence was admitted and the only purpose that you may consider that evidence bears only to the proof of motive; opportunity; intent; preparation; plan; knowledge; identity or absence of mistake or accident. Those are the only purposes for which you may consider this other testimony.
 
 
 13
 The District Court and the prosecution relied on this Court's opinion in United States v. Reese, 568 F.2d 1246 (6th Cir.1977), in which defendant was charged with receiving and concealing stolen property transported in interstate commerce. He denied knowing that the property was stolen and also testified that he never knowingly dealt in stolen property. This Court permitted the government to cross-examine defendant about whether he had previously bought stolen property. Id. at 1249. Defendant denied such knowledge. This Court also permitted the government's rebuttal witnesses to testify that they committed burglaries for defendant and sold the stolen property to defendant. According to the Court, this testimony was proper to show motive, knowledge, and intent. Id at 1249-50.
 
 
 14
 In the present case, the District Court did not abuse its discretion in admitting the testimony concerning Moore's receipt of other stolen property. The Court carefully considered the evidence and found it to be relevant to whether Moore knew that the TV's were stolen, clearly an issue in the case, and concluded that the evidence was not unfairly prejudicial. The evidence was admitted on Moore's cross-examination and concerned similar acts occurring close in time to Moore's receipt of the stolen TV's.
 
 II. HALL
 A. Sufficiency of Evidence
 
 15
 Christian testified that Hall accepted his offer to purchase three of the stolen TV's. Christian further testified that Hall and a friend, Potts, picked up the TV's from Christian two days after the FBI recovered some of the stolen TV's, a well publicized event. Potts corroborated this testimony.
 
 
 16
 FBI agent Danzer testified that he had some conversations with Hall at a restaurant about the stolen TV's. Danzer testified that Hall admitted being at Holbrook's used car lot, the place were the stolen TV's were initially stored, on several occasions, that Hall stated he had been offered a new TV for $300.00, and that at one time some 300 TV's were at Holbrook's lot. Danzer further testified that at an interview in Danzer's office, Hall said he had never had any of the TV's in his possession, never arranged for any to be sold, and never received any proceeds from the sale of TV's.
 
 
 17
 In support of his argument that he had no knowledge of the stolen nature of the TV's, Hall relies on the fact that none of the witnesses testified that he had knowledge that the TV's were stolen. Hall also relies on Christian's testimony that at the time that he (Christian) picked up twenty-seven TV's at Holbrook's used car lot, Hall did not know that the TV's were stolen. However, this occurred before Hall purchased the three TV's from Christian.
 
 
 18
 Considering all the evidence, the District Court did not err in concluding that there was sufficient evidence to convict Hall.
 
 B. Inadmissible Evidence
 
 19
 Hall argues that testimony at trial that under Kentucky law, recent possession of stolen property creates prima facie evidence of knowledge that the property was stolen and that the labelling of two serial numbers on the shipping manifest with Hall's name at trial constitutes plain error under Rule 52.[1]
 
 
 20
 During direct examination of an attorney named Nickell, a witness called on behalf of another defendant, Lewis, to show that Lewis had no knowledge that the TV's were stolen,[2] Nickell testified that he was familiar with Kentucky law on stolen property. On cross-examination, Nickell testified that the elements of the state crime and the federal crime with which Lewis was charged were essentially the same. On re-cross examination, the government explored further the scope of Nickell's advice to Lewis and asked him if he was aware that under Kentucky's receiving stolen property statute, the possession of any recently stolen property is prima facie evidence that such person knew that the property was stolen. Nickell responded that he was aware of this.
 
 
 21
 Lewis' counsel then sought a mistrial contending that the prosecution had improperly injected a presumption of law before the jury. The District Court refused this request and admonished the jury to ignore the government's question and Nickell's response. Hall contends that the District Court's admonition was not sufficient to erase the error, relying on the distinction between a presumption and an inference.
 
 
 22
 Because the District Court admonished the jury on this issue and provided an accurate instruction on the elements necessary to convict Hall, we conclude that the District Court did not abuse its discretion in refusing to grant a new trial.
 
 
 23
 One of the prosecution's exhibits was a bill of lading reflecting the serial numbers of each of the stolen TV's. The witnesses for the prosecution were asked to find the appropriate serial number on the exhibit and mark it with the name of the defendant to whom it was attributed. The jury could then calculate the value of the sets purchased by each defendant, since value is a jurisdictional element of sections 659 and 2315. Defense counsel objected when a witness marked two entries with the word "Hall." Because it is necessary for the jury to calculate the value of the TV's purchased by Hall, we conclude that the District Court did not abuse its discretion in overruling the objection.
 
 C. Prosecutorial Misconduct
 
 24
 Hall contends that the following constituted prosecutorial misconduct: (1) the cross-examination of Nickell regarding Kentucky's stolen property statute; (2) the testimony regarding Moore's possession of other stolen property; (3) the labelling of two serial numbers by a prosecution witness; and (4) the prosecution's statements during closing arguments.[3]
 
 
 25
 Hall contends that the following statements made during the United States' closing argument constitute misconduct:
 
 
 26
 What about Mike Hall? Mike Hall was another one of Vernon's cronies; we know Mike Hall hangs around the car lot and we know he wanted to buy that car lot. He's selling cars off the lot now. Vernon Holbrook admitted he's one of the fellows always around the lot and that's where these TVs were. That was the hub of the activity, was that car lot.
 
 
 27
 In addition, Hall contends that the following remarks made in the rebuttal portion of the argument constitute misconduct:
 
 
 28
 John Potts told you and Leroy Terry told you, whenever they had any TV's, they were brought to them by Mike, delivered to them by Mike and they gave the money back to Mike Hall. Mike was putting the TV's on the street and converting them into cash. Mr. Kibbey said, "They can't tell you they were anywhere." How did Johnnie Potts tell you he first knew about it? When was picking up the trash there was one of these big RCA TV boxes right there in the trash. Mike says, "Yeah; let me show you my new TV," one of these big fancy Monitors with automatic control, the remote control. That's what the proof was; that unrebutted, undisputed proof came in here. That's what came in from the United States' witnesses. Those TV's were shipped up to Floyd County --(Emphasis added).
 
 
 29
 This Court has considered allegations of prosecutorial misconduct on direct review of a conviction in United States v. Leon, 534 F.2d 667 (6th Cir.1976). There, the Court stated that it must consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused." Id. at 679.[4]
 
 
 30
 In the present case, we conclude that the prosecution's statements do not constitute prosecutorial misconduct. There was evidence regarding Hall's association at the used car lot, Hall's sale of other TV's, and the statements to Potts concerning the TV at Hall's residence.
 
 D. Interstate Commerce
 
 31
 Hall's final argument is that the District Court erred in not instructing the jury to consider whether the TV's had come to rest or whether they remained in interstate commerce. The District Court instructed the jury as follows:
 
 
 32
 The interstate or foreign character of a shipment begins when the property is first identified and set aside for shipment and comes into possession in the course of interstate or foreign transportation; and the interstate or foreign character of the shipment continues until the shipment arrives at its destination, is there delivered.
 
 
 33
 This instruction is in accord with this Court's interpretation of sections 659 and 2315. See United States v. Yoppolo, 435 F.2d 625, 626 (6th Cir.1970). At no time did the TV's arrive at their Pennsylvania destination. Thus, we conclude that the District Court did not abuse its discretion in refusing to instruct the jury on this issue.
 
 
 34
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Rule 52(b) provides:
 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
 Hall also contends that the admission into evidence of Moore's receipt of other stolen property constitutes plain error. As discussed above, we conclude that the District Court did not abuse its discretion in admitting this testimony.
 
 
 [2]
 Lewis apparently argued an advise of counsel defense
 
 
 [3]
 Because the testimony and evidence with respect to contentions one through three was properly before the jury, we conclude that there was no prosecutorial misconduct
 
 
 [4]
 The Court also stated that the prosecution should not express to the jury his personal knowledge of the guilt of the accused or mention facts that are not in evidence and are prejudicial